NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CLARK BARNELLA, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

ISLAND TIME POOL SVC, *Respondent Employer*,

WESCO INSURANCE CO, *Respondent Carrier.*

No. 1 CA-IC 20-0011
FILED 12-1-2020

Special Action - Industrial Commission
ICA Claim No. 20180-950445
Carrier Claim No. 2546393-1
The Honorable J. Matthew Powell, Administrative Law Judge

**AFFIRMED**

COUNSEL

Clark Barnella, Surprise
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Broening Oberg Woods & Wilson, PC, Phoenix
By Jerry T. Collen, Alicyn M. Freeman
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge James B. Morse, Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　Clark Barnella filed this statutory special action to obtain a review of an award finding that his work-related injury is stationary and no longer needs active treatment. We find no error by the administrative law judge ("ALJ") and, therefore, affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　In 2017, while installing a swimming pool filter as an employee of Island Time Pool Svc., Barnella injured his left knee. His workers' compensation claim was accepted by Wesco Insurance Co. ("Wesco"), and he received benefits. Shortly after the injury, Barnella had surgery to repair a torn meniscus in the knee.

**¶3**　　　In December 2017, Dr. Eric Feldman, who was treating Barnella, diagnosed him with chronic regional pain syndrome ("CRPS"). In May 2018, Wesco then sent Barnella to an IME conducted by Leon Ensalada, M.D., a pain management specialist with expertise in CRPS. Dr. Ensalada found that Barnella had chronic pain syndrome, complicated by disusing his left leg, but not CRPS. Dr. Ensalada also found that Barnella had reached maximum medical improvement for his knee injury.[1] Barnella had another IME in November 2018 by a neurologist who found lower extremity

---

[1]　　In his May 18 report, Dr. Ensalada wrote that Barnella had not reached maximum medical improvement, but in a July letter to the carrier's lawyers he stated Barnella had reached maximum medical improvement.

atrophy but did not recommend neurological treatment. In November 2018, a third IME was performed by an orthopedic surgeon who found that Barnella had reached maximum medical improvement with his knee. He rated Barnella with a permanent impairment of one percent of the whole person and three percent of the lower left extremity. He agreed that Barnella did not have CRPS.

¶4        In January 2019, Wesco discontinued temporary benefits and assessed Barnella with a three percent permanent disability of his lower left extremity. Barnella challenged that determination, claiming he had not reached maximum medical improvement.

¶5        The ALJ held a hearing at which Dr. Feldman testified about Barnella's condition and recommended further treatment. He testified Barnella had CRPS, needed supportive care, and required work restrictions relating to his knee injury. He would not give an opinion regarding a permanent rating for Barnella's knee impairment because he was "not trained in it" and did not "understand the whole system of grading disabilities." Upon further questioning, he admitted that in December 2018, he had noted that Barnella had reached maximum medical improvement. He explained that statement as follows:

> I do not feel he's going to see any further improvement at this time without -- I do feel there is further intervention that could help him, but I don't necessarily see he's going to get any better without any other treatment.

Finally, he also testified that he "did not formally grade [Barnella's] CRPS."

¶6        The ALJ also heard testimony from Dr. Ensalada. He explained his reasons for concluding that Barnella did not have CRPS. He testified Barnella did not need any further active or supportive treatment for pain management, nor did he have any work restrictions. He stated that a better description of Barnella's knee condition was "disuse atrophy."

¶7        The ALJ issued an award finding Dr. Ensalada's opinion to be more credible than Dr. Feldman's. Accordingly, he issued an award finding that Barnella's condition was stationary and closed the claim with a permanent impairment. This appeal followed.

## DISCUSSION

¶8        In reviewing workers' compensation awards, we defer to the ALJ's factual findings but independently review legal conclusions. *Young v.*

*Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We will affirm an award if the evidence reasonably supports it after reviewing the evidence in a "light most favorable to sustaining the award." *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). An ALJ has the primary responsibility to resolve conflicts in medical opinion evidence. *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000). We defer to the ALJ's resolution of conflicting evidence and affirm the findings if any reasonable theory of the evidence supports them. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975).

**¶9**　　　　We see nothing in the record that would lead us to conclude the ALJ's decision to give Dr. Ensalada's opinion more weight than Dr. Feldman's was unreasonable. Dr. Ensalada is a qualified expert, he explained his conclusions, and he described the information he used to arrive at them. Barnella's dissatisfaction and disagreement with the ALJ's decision to follow the IME physician's opinion over a treating physician are not grounds to reverse an award. As noted, we defer to an ALJ's resolution of conflicting evidence unless it is unreasonable. *Carousel Snack Bar*, 156 Ariz. at 46 ("Many factors enter into a resolution of conflicting evidence, including whether or not the testimony is speculative, consideration of the diagnostic method used, qualifications in backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred.").

## CONCLUSION

**¶10**　　　　We affirm the award.



AMY M. WOOD • Clerk of the Court
FILED:　　AA