NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SUSAN OLSEN, *Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

AMAZON.COM, *Respondent Employer*,

AMERICAN ZURICH INSURANCE CO, *Respondent Insurance Carrier*.

No. 1 CA-IC 21-0051
FILED 8-2-2022

Special Action - Industrial Commission
ICA Claim No.  20203430189
Carrier Claim No. 40201133G2F-0001
The Honorable Rachel C. Morgan, Administrative Law Judge

**AWARD AFFIRMED**

APPEARANCES

Susan Olsen, Sahuarita
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Jardine Baker Hickman & Houston PLLC, Phoenix
By Stephen M. Venezia
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Susan Olsen appeals an Industrial Commission of Arizona (ICA) award affirming the closure of her claim with no further benefits. Because there is evidence to support the administrative law judge's (ALJ) conclusion—Olsen is no longer in need of active medical care, she does not need supportive care, and she does not have a permanent impairment—we affirm.

**BACKGROUND**

¶2        In November 2020, Olsen began working in an Amazon Fulfillment Center warehouse. On her second day of work, she felt pain in her lower back on the left side as she lifted a package, placing it on an overhead shelf. She finished her shift but had trouble getting out of bed the next day because of the pain in her back. She did not return to work.

¶3        Amazon sent her to Ryan Zate, D.O., a board-certified physical medicine and rehabilitation specialist. Dr. Zate obtained MRIs of Olsen's back in November and December 2020 and diagnosed a compression fracture. He initially gave Olsen medial branch block injections. When that treatment did not provide relief, he performed a vertebral augmentation called "kyphoplasty" that "cement[ed]" the fractured area to help it to heal. The kyphoplasty, performed in January 2021, provided her relief from the back pain. Amazon and its carrier, American Zurich Insurance Co., accepted Olsen's workers' compensation claim but denied coverage for the kyphoplasty procedure. Olsen used private insurance to cover the procedure.

¶4        Dr. Zoran Maric, M.D., a board-certified orthopedic surgeon, conducted an Independent Medical Examination (IME) of Olsen in January 2021, prior to the kyphoplasty procedure. The IME included a review of

2

medical records, including the MRIs, and a physical examination of Olsen. Dr. Zoran inquired about Olsen's history of back pain, and she told him that she had previously injured her back two to three years ago from jumping on a trampoline. During his physical examination, Olsen had a normal range of motion in her lumbar spine, which he said is not consistent with someone with a spinal fracture. She also did not experience pain during a physical test as he would expect in someone with an injured spine.

¶5 The carrier then issued a notice closing the claim without permanent impairment, which Olsen challenged. The ICA held several hearings and received testimony from Olsen, Dr. Zate, and Dr. Maric. Olsen testified about how she was injured and the treatments that followed, as recounted above.

¶6 Dr. Zate testified that he saw evidence of a compression fracture on the MRIs and confirmed that he performed kyphoplasty at the fractured area in January 2021. He stated that he was not aware of any history of right side back pain from a preexisting condition before Olsen's November injury. Dr. Zate provided his opinion that Olsen needed supportive care such as physical therapy, medications, and periodic office visits. It was his opinion that Olsen had reached maximum medical improvement in mid-February 2021, and that she had some level of permanent impairment due to her injury.

¶7 Dr. Maric had a different view. He opined that Olsen had experienced a lower back sprain/strain that had resolved when he examined her in early January 2021. He testified that her explanation of how she was injured was inconsistent with the mechanism of injury that would cause a compression fracture. Such a mechanism would entail movement that would compress the spine, such as jumping up and down. Instead, Olsen lifted a box and put it on an overhead shelf at the time of injury, which he identified as an extension load, a decompression rather than a compression of the discs. Dr. Maric also explained that after he reviewed the MRI images, he did not see any evidence of fracture. Instead, in his opinion, the images showed a "Modic end-plate reactive change" that he described as a degenerative condition. In his view, the MRIs showed the presence of "bony spurs" that take years to develop, thus confirming his conclusion that Olsen has a degenerative spinal condition. Dr. Maric concluded that Olsen had strained her back and that it had healed by early January 2021, with no need for further treatment and no permanent impairment.

¶8        After weighing the evidence, the ALJ found Dr. Maric's testimony "more probably correct and well-founded to a reasonable medical probability." The ALJ concluded that Olsen had reached maximum medical improvement and needed no further care, either active or supportive, and that Olsen suffered no permanent impairment. Olsen filed a request for review of the decision, arguing that the ALJ should have given Dr. Zate's opinion more weight than Dr. Maric's because Dr. Zate was the treating physician. The ALJ reviewed the record and remained convinced that Dr. Maric's opinion was more credible. Olsen now brings this special action review.

## DISCUSSION

¶9        In reviewing the findings and awards of the ICA, we defer to the ALJ's factual findings. *Avila v. Indus. Comm'n*, 219 Ariz. 56, 57, ¶ 2 (App. 2008). On appeal, we view the evidence in the light most favorable to upholding the award. *Id*. The ALJ has the primary responsibility to resolve conflicts in medical opinion evidence. *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *see also Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000). We defer to the ALJ's resolution of conflicting evidence and affirm the ALJ's findings if any reasonable theory of the evidence supports them. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975). An award based on conflicting medical testimony will not be disturbed. *See Smiles v. Indus. Comm'n*, 2 Ariz. App. 167, 168 (1965).

¶10       Here, the ALJ was presented with two conflicting medical opinions about the nature and extent of Olsen's back injury. The ALJ ultimately concluded that Dr. Maric's testimony and opinion were consistent with the evidence and presented a reasonable theory of the nature and extent of the injury. His opinion was based on his review of the MRIs and his physical examination of Olsen before the kyphoplasty was performed. Although Olsen believes the ALJ should have given more weight to Dr. Zate's opinion as her treating physician, the ALJ was not compelled to do so. We will not disturb her resolution of the conflicting medical evidence. Where two different inferences may be drawn from the evidence, the ALJ has the discretion to resolve those conflicts and choose either inference; a reviewing court will not disturb that choice unless it is wholly unreasonable. *Waller v. Indus. Comm'n*, 99 Ariz. 15, 18 (1965).

## CONCLUSION

¶11 We affirm the award.



AMY M. WOOD • Clerk of the Court
FILED: AA