NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DANIEL L. POULTER, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

ARIZONA DEPARTMENT OF GAME & FISH, *Respondent Employer,*

STATE OF ARIZONA, *Respondent Carrier.*

No. 1 CA-IC 15-0071
FILED 6-21-2016

Special Action - Industrial Commission
ICA Claim No.  20132-600351
Carrier Claim No. W291303566
The Honorable Layna Taylor, Administrative Law Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Maria A. Morlacci
*Counsel for Respondent Employer and Respondent Carrier*

Industrial Commission of Arizona, Phoenix
By Jason Porter
*Counsel for Respondent*

Daniel L. Poulter, Glendale
*Petitioner*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**G O U L D**, Judge:

¶1            Daniel L. Poulter ("Petitioner") challenges the Administrative Law Judge's ("ALJ") determination regarding the percentage of his permanent impairment.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2            Petitioner worked for the Arizona Department of Game and Fish as a wildlife habitat construction technician.  While on the job in December 2012, Petitioner injured his left ankle when he slipped on wet rocks while stepping out of the heavy equipment he was operating.  Petitioner filed an industrial claim, and in August 2013 he received temporary compensation and medical benefits from the State of Arizona, Department Risk Management (the "Department").

¶3            In October 2014, the Department terminated Petitioner's temporary benefits and designated his injury a permanent disability.  The Department authorized supportive medical maintenance benefits, including continued office visits, medical supplies and medication, through October 2016.  Based on a physician evaluation, the Department determined Petitioner had sustained a 13% permanent disability to his left ankle, entitling him to a one-time payment of $19,803.68 in permanent disability benefits.  Petitioner requested a hearing, asserting the percentage the Department assigned "doesn't meet AMA [American Medical Association] facts."

¶4            The Industrial Commission held a hearing in March 2015, and a subsequent hearing in May 2015.  In July 2015, the ALJ issued her decision

2

and findings and awarded Petitioner $19,803.68. Petitioner filed a Request for Review, again asserting the level of his disability "was not in line with AMA guidelines according to [his] understanding and reading of [the] guidelines." The ALJ affirmed the award and Petitioner appealed.

## DISCUSSION

¶5        We will sustain the ALJ's determination if it is reasonably supported by the evidence, and evaluate the evidence in a light most favorable to sustaining the award. *Micucci v. Indus. Comm'n*, 108 Ariz. 194, 195 (1972). For the following reasons, we find sufficient evidence supports the ALJ's decision.

¶6        During the March hearing, Petitioner stated he did not understand how the 13% disability rating was calculated. The ALJ advised Petitioner that the physician who calculated his disability rating specialized in making such determinations, and that the court would require the physician to testify at the next hearing to explain Petitioner's rating.

¶7        During the May hearing, Dr. William Leonetti testified about his examination of Petitioner, his review of Petitioner's medical records, and his use of the AMA Guides to the Evaluation of Permanent Impairment, Sixth Edition, (the "Guides") in determining Petitioner's level of disability. Dr. Leonetti also answered Petitioner's questions regarding the Guides, and he explained how he made his disability rating determination.

¶8        Petitioner argues, however, that the ALJ prohibited him from asking "any medical questions of Dr. L[e]onetti due to the fact that [he] was not a physician[.]" The record does not support this assertion. Petitioner did cross-examine Dr. Leonetti regarding medical issues. Further, the ALJ did not prohibit Petitioner from asking medical questions; rather, the court instructed Petitioner that he could not *testify* as to his own medical opinions and conclusions.

¶9        The record shows the ALJ considered all of the medical evidence, including Dr. Leonetti's written medical evaluation and his testimony at the hearing. Both the evaluation and testimony showed that Dr. Leonetti determined Petitioner to have a 10% impairment of his lower left extremity (ankle) due to motion deficits and weakness, and an additional 3% impairment due to nerve injury resulting in permanent loss of sensation, for a total 13% impairment. Despite being advised of his right to obtain his own medical expert, Petitioner did not submit any medical evidence controverting Dr. Leonetti's testimony. *See Brooks v. Indus. Comm'n*, 24 Ariz. App. 395, 399 (1975) (stating that petitioner has

responsibility to present evidence and prove his position by a preponderance of the evidence).

¶10 Accordingly, we conclude that reasonable evidence supports the ALJ's decision.

## CONCLUSION

¶11 For the reasons stated above, we affirm the ALJ's Decision Upon Review.



Ruth A. Willingham · Clerk of the Court
FILED: AA